UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RYAN DENVER, <br><br> Plaintiff, <br><br> v. <br><br> MARKEL AMERICAN INSURANCE COMPANY, <br> Defendant. | * <br> * <br> * <br> * <br> * <br> * Civil Action No. 22-cv-11150-ADB <br> * <br> * <br> * <br> * <br> * |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

On July 17, 2021, Plaintiff Ryan Denver ("Denver") was operating his boat when it struck an obstruction, "Daymarker No. 5," in Boston Harbor, resulting in injuries to multiple passengers and one death (the "Incident"). [ECF No. 7 ¶¶ 17–19 ("First Amended Complaint" or "FAC")]. Denver had an insurance policy through Defendant Markel American Insurance Company ("Markel"). [Id. ¶¶ 6, 8–10]; see also [ECF No. 35-1[1] (the "Policy")]. This dispute relates to the parties' obligations under the Policy. See generally [FAC]. Now pending before the Court is Markel's motion for judgment on the pleadings on Counts I and II of the FAC. [ECF No. 33]. For the reasons set forth below, the motion is GRANTED as to Count I and DENIED as to Count II.

---

[1] Although the Policy is not attached to the Amended Complaint, and "[o]rdinarily, . . . any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993), courts "have made narrow exceptions for documents the authenticity of which are not disputed by the parties; . . . for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Id. Here, the Court will consider the July 27, 2021 Policy at ECF No. 35-1 because its authenticity is not in dispute, see generally [ECF No. 39], it is central to the claims at issue, and it is referred to by date in the pleadings, see, e.g., [ECF No. 7 at 3; ECF No. 14 at 8].

I.  **STANDARD OF REVIEW**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Courts considering motions for judgment on the pleadings use a standard similar to the one used for motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), except that a "Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54–55 (1st Cir. 2006).

"Judgment on the pleadings is proper 'only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.'" Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007) (quoting Aponte-Torres, 445 F.3d at 54). That said, "[t]o survive a motion for judgment on the pleadings, a complaint must allege sufficient facts to 'state a claim to relief that is plausible on its face.'" Sevelitte v. Guardian Life Ins. Co., 55 F.4th 71, 79 (1st Cir. 2022) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007))). "Those factual allegations cannot be 'meager, vague, or conclusory.'" Id. (quoting Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 63 (1st Cir. 2018) (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc))).

II.  **BACKGROUND**

   A.  **Procedural History**

The parties have brought several claims and counterclaims that, in general, seek a ruling that Markel is, or is not, obligated to indemnify and defend Denver for claims stemming from the Incident. See infra. Specifically, on November 4, 2022, Denver filed the First Amended Complaint, [FAC], asserting claims for (1) breach of contract (Count I), [id. ¶¶ 46–50], (2) bad faith (Count II), [id. ¶¶ 51–54]; and (3) a declaratory judgment that "Markel is obligated to cover

Plaintiff for the alleged losses" (Count III), [id. ¶¶ 55–56].  On January 13, 2023, Markel answered and counterclaimed, [ECF No. 14 (the "Markel Answer"<sup>2</sup> and "Counterclaims")], seeking a declaratory judgment that (1) the policy is null and void, [Counterclaims ¶¶ 46–58]; (2) insurance coverage is excluded under the policy, [id. ¶¶ 59–74]; and (3) Denver breached the policy and the implied and express warranties rendering the policy null and void, [id. ¶¶ 75–88]. Denver answered Markel's Counterclaims on February 24, 2023, [ECF No. 22 ("Denver Answer")].

On April 21, 2023, Markel moved for judgment on the pleadings on Counts I and II of the FAC.  [ECF No. 33].  Denver opposed on May 19, 2023, [ECF No. 39], and Markel replied on June 2, 2023, [ECF No. 43].

Separately, on May 19, 2023, Denver moved to exclude his examination under oath from the Court's consideration of Markel's motion for judgment on the pleadings.  [ECF No. 40]. Markel opposed on June 2, 2023.  [ECF No. 43].

**B.** **Factual Background**

"Because [a Rule 12(c)] motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom . . . ."  Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (alteration in original) (citations and internal quotation marks omitted).

On July 27, 2021, Markel issued Denver the Policy, which covers the period from June 28, 2021 through June 28, 2022.  [Markel Answer ¶ 10].

---

<sup>2</sup> Citations to the "Markel Answer" incorporate both the allegation from the corresponding FAC paragraph as well as Markel's answer to the allegation.

The Incident occurred on July 17, 2021, when Denver was operating the Vessel with seven passengers on board. [FAC ¶ 17]; see also [Denver Answer ¶ 14]. The Vessel was damaged, six passengers were rescued, at least some with alleged injuries, and one passenger drowned. [FAC ¶¶ 18–19]; see also [Denver Answer ¶ 15].

Several provisions of the Policy are relevant here. First, the Policy includes coverage limits of, among others, $680,000 for the Vessel (the "Hull, Agreed Value") and $2,000,000 for "Protection and Indemnity." [Markel Answer ¶¶ 11; Policy at 5].

Second, the "General Conditions" provide the following:

> 3. Misrepresentation or Fraud[.] All insurance provided by this policy will be null and void if you, at any time, either intentionally conceal or misrepresent any fact, regardless of materiality, or if you misrepresent or conceal any material fact regardless of intent. No action or inaction by us will be deemed a waiver of this provision. . . .
>
> 8. Legal Action Against Us[.]  a.  No suit or action may be brought against us unless there has been full compliance with all terms of this policy.  b. With respect to coverage provided under PHYSICAL DAMAGE, no suit or action may be brought against us unless the action is brought within 12 months after the date you first have knowledge of the loss. . . .
>
> 12. Claim or Suit Against You[.]  You must immediately notify us and send us every demand notice, summons or other legal papers received by you or your representative, if a claim is made or a suit is brought against you for liability that is covered under this policy. We will pay the ensuing cost of the suit and have the sole right to control the defense of the suit. We also have the option of naming attorneys to represent you in the suit.
>
> 13. General Duties Following a Loss[.] . . . After requested by us, you must file within ninety (90) days thereof, with us or our authorized agent, a written statement about the details of the loss. This statement must be signed and sworn by you. You, as often as we may reasonably require, will:  a. exhibit to any person we designate all that remains of any property that may be covered under this policy;  b. submit and subscribe to examinations under oath by any person named by us. If more than one person is examined, we have the right to examine and receive statements separately from each person and not in the presence of the others;  c. produce for examination and permit extracts and copies of all books of account, bills, invoices, other vouchers and any other tangible items related to the claimed loss, or certified copies thereof if the originals are lost, at such reasonable time and place as may be designated by us or our representative. You must cooperate with us in the

4

investigation, defense or settlement of any loss. If you do not comply with these general duties, then no coverage for the loss will be provided.

[Policy at 12–14]; see also [Markel Answer ¶ 41].

Third, the "General Exclusions" provision states that

No coverage is provided under this policy for loss or damage, liabilities incurred by any person, injury or damages or expenses of any type for loss caused by, resulting from or arising out of: . . .

6. Willful or intentional misconduct or criminal act on the part of any insured or during any illegal activity on the part of the insured.

[Policy at 14–15].

On July 26, 2021, Markel was informed of the Incident and the request for defense and indemnification. [Markel Answer ¶ 20]. On July 27, 2021, Markel sent Denver a "7/27/2021 Reservation of Rights" letter. [Id. ¶¶ 21–22]; see also [ECF No. 39-2[3] ("7/27/2021 Reservation of Rights Letter")]. The 7/27/2021 Reservation of Rights Letter provides, among other things, the following:

> [Markel] is reserving its rights regarding the defense and indemnification of this accident. [Markel] will continue to investigate this matter under this Reservation of Rights letter. [Markel] reserves the right to investigate and disclaim coverage for any damages that are not covered under the binder referenced, as specifically set forth below. The following will outline the position being taken by [Markel] to Ryan Denver.
>
> **Background**[.]  Following notification of this accident received on 07/26/2021 from Global Marine Insurance Agency and a letter of representation from Michael J. Connolly at Hinckley Allen, [Markel] reviewed the binder and information available to [Markel] to also include online reports. According to the loss notice, it is alleged that Mr. Denver was operating the vessel within the Boston Harbor when he struck a navigational marker. There were six passengers that were injured and one passenger, Jeanice Julce, was fatally wounded. The state attorney's office

---

[3] Although the 7/27/2021 Reservation of Rights Letter is not attached to the FAC, its authenticity is not disputed and it is sufficiently referred to in the pleadings by date, and thus the Court will consider it for purposes of this motion. See [Markel Answer ¶¶ 21–22]; see also Watterson, 987 F.2d at 3.

and the FBI are involved in the ongoing investigation. . . . [I]t is noted that the policy provides, in relevant part, as follows:

> **General Exclusions**[.]   *No coverage is provided under this policy for loss or damage, liabilities incurred by any person, injury, or damages or expenses or any type for loss caused by, resulting from or arising out of:  6. Willful or intentional misconduct or criminal act on the part of any* **insured***, or during any illegal activity on the part of any* **insured***. . . .*
>
> To the extent that this accident occurred as a result of any willful or intentional misconduct or criminal act, or during any illegal activity by the insured, there is no coverage under this policy.

[7/27/2021 Reservation of Rights Letter at 3–5 (emphasis in original)].

On August 16, 2021, Denver sent Markel notice of a wrongful death claim, [Markel Answer ¶ 24], which asked for confirmation that Markel would defend and indemnify Denver, [ECF No. 39-3[4]].  Three months later, on November 12, 2021, Denver "filed an action pursuant to the Limitation of Shipowner's Liability Act, 46 U.S.C. §§ 30501-12 (2006), in the District of Massachusetts. . . .  See Docket No. 1:21-cv-11841-ADB (the 'Limitation Action')." [Markel Answer ¶ 26].

Thereafter, in December 2021, the parties exchanged correspondence regarding coverage, [Markel Answer ¶¶ 32–34], ultimately leading to a second reservation of rights letter from Markel on January 18, 2022, [Markel Answer ¶ 38; ECF No. 35-2[5] ("1/18/2022 Reservation of Rights Letter")].  Among other things, the 1/18/2022 Reservation of Rights Letter states the following:

> We write in response to your correspondence, dated December 3, 2021, our conversations and correspondence regarding the Incident thereafter, and to reiterate and clarify [Markel]'s coverage position concerning the Incident and the Policy.

---

[4] The Court will consider this 8/16/2021 letter for the same reasons that it can consider the 7/27/2021 Reservation of Rights Letter.  See supra.

[5] The Court will consider the 1/18/2022 Reservation of Rights Letter for the same reasons that it will consider the 7/27/2021 Reservation of Rights Letter.  See supra.

> [Markel] continues to reserve its rights concerning any defense and indemnity sought with respect to claims arising out of the Incident under the Policy. [Markel] will continue to investigate this matter under this Reservation of Rights letter. [Markel] reserves the right to investigate and disclaim coverage for any damages that are not covered under the Policy, as specifically set forth below. The following outlines [Markel]'s position regarding Denver's claims under the Policy in connection with the Incident. . . .
>
> On October 26, 2021, Denver was indicted by a Suffolk County grand jury under Indictment 2184CR00670 and charged with the following six (6) counts of criminal activity in connection with the Incident: 001) aggravated assault and battery by means of a dangerous weapon, serious bodily injury under M.G.L. c. 265 § 15(A)(c)(i); 002) aggravated assault and battery by means of a dangerous weapon, serious bodily injury under M.G.L. c. 265 § 15(A)(c)(i); 003) aggravated assault and battery by means of a dangerous weapon, serious bodily injury under M.G.L. c. 265 § 15(A)(c)(i); 004) aggravated assault and battery by means of a dangerous weapon under M.G.L. c. 265 § 15(A)(b); 005) aggravated assault and battery by means of a dangerous weapon under M.G.L. c. 265 § 15(A)(b); and, 006) involuntary manslaughter under M.G.L. c. 265 § 13 (collectively, the "Criminal Charges"). . . . On November 19, 2021, Denver was arraigned by the Honorable Jeffrey A. Locke in Suffolk County Superior Court for the Commonwealth of Massachusetts and pleaded not guilty to the Criminal Charges in connection with the Incident (the "Criminal Case").

[1/18/2022 Reservation of Rights Letter at 1–2]. The letter then says that "[i]t is noted that the Policy provides . . . as follows," and cites to, among others, General Condition numbers 3 ("Misrepresentations or Fraud"), 12 ("Claim or Suit Against You"), and 13 (General Duties Following a Loss"), as well as General Exclusion number 6 ("Willful or Intentional Misconduct or Criminal Act"). [Id. at 3–5]. It concludes that

> to the extent that Denver, at any time, either intentionally conceals or concealed or misrepresents or misrepresented any fact, regardless of materiality, or if Denver misrepresents or misrepresented or conceals or concealed any material fact regardless of intent, the Policy is null and void.
>
> To the extent that this accident occurred because of any willful or intentional misconduct or criminal act, or during any illegal activity by Denver, there is no coverage under the Policy.
>
> Regarding [Denver's counsel's] December 3, 2021 correspondence and your demands for payment for alleged fees for defense, [Markel] agrees under this Reservation of Rights Letter to compensate Denver's counsel and experts at the following rates from the date of the receipt of the above-referenced claims . . .

7

>Lastly, please contact undersigned counsel by February 16, 2021 to arrange for Denver to sit for an Examination Under Oath [("EUO")] as required by the Policy terms.

[Id. at 7–8]; see also [Markel Answer ¶ 38].

Finally, on July 14, 2022, counsel for Markel sent Denver's counsel a letter stating that

>I am in receipt of your email to me dated July 13, 2022, which attached your letter to Jessica Mazzei dated July 12, 2022. We are aware of that twelve-month limitation in the Policy, along with all other General Conditions and General Exclusions. Please refer to my January 18, 2022 "Reservation of Rights" letter regarding other specific terms. Regarding the limitation period, we are open to discussing a reasonable tolling period. During the pendency of that period, while continuing to reserve its rights during a status quo on all other coverage, my client will be preparing to file a declaratory judgment action. The court's decision in this action should dictate any and all coverage for your client under the Policy.

[ECF No. 35-3[6] at 1]; see also [Markel Answer ¶ 44]. In addition, Markel sent Denver's counsel a letter requesting records, [Markel Answer ¶ 45], which Markel appears to admit were requested, so it could "continue its investigation of Mr. Denver's claim," [ECF No. 34 at 5].

## III. DISCUSSION

Markel moves for judgment on the pleadings on Counts I (breach of contract) and II (bad faith) on the general grounds that it "maintains a valid defense to coverage under the Policy under, *inter alia*, the criminal activity exclusion, and [Markel] has, in fact, provided [Denver] with a defense." [ECF No. 34 at 1].

### A. Breach of Contract (Count I)

To establish a breach of contract in Massachusetts, a "plaintiff [must] show the existence of a valid and binding contract, that the defendant breached the contract's terms, and that the plaintiff suffered damages as a result of that breach." Scholz v. Goudreau, 901 F.3d 37, 43 (1st

---

[6] For largely the same reasons that the Court will consider the 1/18/2022 Reservation of Rights Letter and the 7/27/2021 Reservation of Rights Letter, the Court will consider this July 14, 2022 letter from Denver's counsel to Markel at ECF No. 35-3. See supra.

Cir. 2018) (citing Brooks v. AIG SunAmerica Life Assurance Co., 480 F.3d 579, 586 (1st Cir. 2007)).

Denver alleges that Markel breached the Policy by (1) "failing to provide [him] a defense," [FAC ¶ 48], and (2) "failing to provide a coverage determination on Mr. Denver's Hull Coverage claim within the twelve (12) month limitation period," [id. ¶ 49]. Markel argues that these allegations fail because (1) Markel "has provided Denver with a defense" and (2) "there exists no deadline in the Policy by which [Markel] was obligated to provide a determination of hull coverage." [ECF No. 34 at 9]. Denver's response fails to meaningfully respond to either argument, and instead amounts to an argument as to why he should be entitled to a declaratory judgment that Markel is obligated to cover his losses (e.g., Count III, which is not at issue here). See generally [ECF No. 39]. At most, he states without citation or support that Markel "began to partially pay for Denver's defense," and only "eventually funded Denver's [d]efense," [ECF No. 39 at 12], perhaps implying that Markel's defense is somehow incomplete or inadequate.

First, with respect to failing to provide a defense, the FAC itself implies that Markel is now defending Denver. See [FAC ¶ 40 ("Markel did not agree to pay for Mr. Denver's defense *until* January 31, 2022") (emphasis added)]. As noted above, the same is true of Denver's opposition to the present motion, which indicates that Markel has contributed to Denver's defense. [ECF No. 39 at 12]. In short, there are no facts, and Denver provides no argument, to support a finding or inference that Markel breached any Policy term by, for example, not paying certain legal bills.

Second, with respect to a delay in providing a coverage determination, Denver has not pointed to any term in the contract that Markel could have breached by reserving its rights on a

9

final determination of coverage while it investigated the claim (even though it appears to have agreed to provide a defense in the meantime).

Thus, even viewing the pleadings in the light most favorable to Denver, Pérez-Acevedo, 520 F.3d at 29, the facts as pleaded "conclusively establish" Markel's "entitlement to a favorable judgment" on the breach of contract claim because there does not appear to be any breach of the terms of the Policy. See Zipperer, 493 F.3d at 53 (quoting Aponte-Torres, 445 F.3d at 54); see also Sevelitte, 55 F.4th at 79 ("[t]o survive a motion for judgment on the pleadings, a complaint must allege sufficient facts to 'state a claim to relief that is plausible on its face.'" (quoting Ashcroft, 556 U.S. at 678 (quoting Bell Atl. Corp., 550 U.S. at 570))).[7] Accordingly, Denver's breach of contract claim, Count I, is DISMISSED without prejudice to filing an amended complaint with allegations sufficient to support a finding, or even an inference, that Markel is failing to provide a defense or that it breached a particular term in the Policy by delaying its decision to defend while it investigated.

**B.     Bad Faith (Count II)**

In Massachusetts, "'every contract is subject to an implied covenant of good faith and fair dealing.'" NextSun Energy Littleton, LLC v. Acadia Ins. Co., 494 F. Supp. 3d 1, 21 (D. Mass. 2020) (quoting Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 821 (Mass. 1991)). "The covenant provides that 'neither party shall do anything that will have the effect of

---

[7] Neither of the cases Denver cites in support of his argument that Markel's "[c]onduct is [n]ot [e]xcused [b]ecuase [i]t [e]ventually [f]unded Denver's [d]efense," [ECF No. 39 at 12], address a breach of contract claim based on a movant alleging that a party unreasonably delayed in providing coverage or a defense, see Clegg v. Butler, 676 N.E.2d 1134, 415–17, 419–20 (Mass. 1997) (alleging unfair settlement practices pursuant to provisions of Mass. Gen. Laws Chs. 167D and 93A due to a delay in effectuating a settlement); Chiulli v. Liberty Mut. Ins., Inc., 146 N.E.3d 471, 474–75 (2020) (Mass. App. Ct. 2020) (similar).

destroying or injuring the right of the other party to receive the fruits of the contract.'" Id. (quoting Anthony's Pier, 583 N.E.2d at 820).

"The scope of the covenant is only as broad as the contract between the parties, and the implied covenant does 'not create rights or duties beyond those the parties agreed to when they entered into the contract.'" NextSun Energy, 494 F. Supp. 3d at 21 (quoting Curtis v. Herb Chambers I-95, Inc., 940 N.E.2d 413, 419 (Mass. 2011). That said, "[a] party may breach the covenant of good faith and fair dealing implicit in every contract without breaching any express term of that contract" because, "[o]therwise, the implied covenant would be a mere redundancy." In re Sullivan, 346 B.R. 4, 22 (Bankr. D. Mass. 2006) (quoting Speakman v. Allmerica Fin. Life Ins., 367 F. Supp. 2d 122, 132 (D. Mass. 2005)). "The essential inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance." Id. (quoting Speakman, 367 F. Supp. 2d at 132). The covenant does not apply, however, "where the defendant has exercised an express contractual power in good faith—that is, in a manner that comports with the parties' reasonable expectations as to performance." Speakman, 367 F. Supp. 2d at 132.

"Typically, 'a breach of the implied covenant involves bad faith conduct implicating a dishonest purpose, consciousness of wrong, or ill will in the nature of the fraud.'" NextSun Energy, 494 F. Supp. 3d at 21 (quoting Targus Grp. Int'l, Inc. v. Sherman, 922 N.E.2d 841, 853 (Mass. App. Ct. 2010) (internal citations and quotations omitted)). "The fact that an insurer contests coverage, without more, is not sufficient to prove a breach of the implied covenant of good faith and fair dealing, even if the insurer's position proves to be incorrect." Id. (citing Nagel v. Provident Mut. Life. Ins. Co., 749 N.E.2d 710, 714–15 (Mass. App. Ct. 2001)).

11

Denver alleges that "[t]he Policy imposes a duty on Markel to act in good faith in representing and protecting the plaintiff with respect to any claim or litigation," [FAC ¶ 52], and that

> [t]he bad faith failure of Markel to provide a defense to Mr. Denver in timely fashion and to provide a coverage determination on the Physical Damage claim within the Policy's twelve (12) month limitation period were breaches and violations of the duty of good faith Markel owed to its insured, wholly disregarded the interests of the insured, and acted solely in Markel's own interest,

[id. ¶ 53]. Markel argues that it is entitled to contest and investigate coverage, and that the Policy explicitly allows it to do so, especially in light of the ongoing criminal proceedings against Denver, [ECF No. 34 at 12], and also that at least some portion of the delay is attributable to Denver's purported delay in sitting for an EUO, [id. at 12–13]. In response, among other things, Denver argues that (1) Markel relies on "self-serving and incomplete factual information outside the scope of the pleadings and outside the scope of any documents fairly incorporated therein," namely Denver's EUO testimony as compared to his Policy application, [ECF No. 39 at 4–5]; (2) Markel purportedly knew it had a duty to defend at least as early as July 27, 2021, [id. at 5–6]; (3) Markel waited seven months to do so, [id. at 8]; (4) Markel's claims for exclusion are without basis and do not justify the delay, [id. at 9–12]; (5) Denver was unreasonably forced to pay for his defense out of pocket until Markel decided to do so, [id. at 10–11]; and (6) the fact that Markel did eventually begin to "partially pay for Denver's defense" should not "insulate[ it] from liability for its bad faith refusal to defend until then," [id. at 12].

As an initial matter, the allegations here involve more than Markel's contesting coverage. See NextSun Energy, 494 F. Supp. 3d at 21. Rather, Denver alleges that Markel unreasonably delayed in defending and providing a coverage determination, resulting in injury when he, for example, had to pay out of pocket. See [FAC ¶¶ 55–56; ECF No. 39 at 4–12].

12

Turning to the facts, any evidence here of "dishonest purpose, consciousness of wrong, or ill will in the nature of the fraud" is extremely thin. See NextSun Energy, 494 F. Supp. 3d at 21 (quoting Targus Grp. Int'l., 922 N.E.2d at 853). Rather, it appears that Markel reasonably exercised its right to investigate the claim (especially in light of, for example, the pending criminal case, see [1/18/2022 Reservation of Rights Letter]), and even offered to toll the time by when Denver needed to file suit, [ECF No. 35-3 at 1]; see also [Markel Answer ¶ 44]. Moreover, Denver was able to preserve his claim in this lawsuit. See NextSun Energy, 494 F. Supp. 3d at 21 (granting summary judgment on a breach of the implied covenant of good faith and fair dealing claim in part because "[t]here [wa]s no evidence that [the insurer] took any dishonest or deceitful actions to deprive plaintiff of the benefit of the policy. Instead, it denied plaintiff's claim in writing, without excessive delay, in a manner that allowed plaintiff to preserve its claims in this lawsuit.").

That said, Denver has alleged that Markel waited nearly seven months to agree to defend him, and still withheld a final determination of coverage even at that late date. See [Markel Answer ¶ 38; 1/18/2022 Reservation of Rights Letter]. In light of this delay, coupled with the fact that Markel's "mentality" in waiting is unknown based on the pleadings (and could have been dishonest or deceitful), the Court finds that it cannot "conclusively establish [that Markel is] entitle[d] to a favorable judgment," see Zipperer, 493 F.3d at 53 (quoting Aponte-Torres, 445 F.3d at 54), and thus judgement on the pleadings is not appropriate, see id.; see also NextSun Energy, 494 F. Supp. 3d at 21 (granting summary judgment in part because "[t]here [wa]s no evidence that [the insurer] . . . denied plaintiff's claim in writing[] **with[] excessive delay**.") (emphasis added); Targus Grp. Int'l, 922 N.E.2d at 853 (reversing summary judgment on good faith and fair dealing claim because "the summary judgment record leaves the mentality of the

[defendant] unresolved as a genuine issue of material fact."). The Court notes, however, that it would scrutinize this claim closely on any summary judgment motion and, based on the current record, is skeptical that facts can be developed to adequately support this claim.[8]

## IV. CONCLUSION

Accordingly, Markel's motion for judgment on the pleadings is GRANTED without prejudice as to Count I and DENIED as to Count II.

**SO ORDERED.**

March 12, 2024                                         /s/ *Allison D. Burroughs*
                                                       ALLISON D. BURROUGHS
                                                       U.S. DISTRICT JUDGE

---

[8] Because the Court does not need to consider the EUO transcript to reach its ruling here, Denver's motion to exclude the EUO, [ECF No. 40], is DENIED as moot.