**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**RYAN DENVER,**
        **Plaintiff,**

**v.**

**MARKEL AMERICAN INSURANCE**
**COMPANY,**
        **Defendant.**

**Civil Action No.: 22-cv-11150-ADB**

**PLAINTIFF'S SURREPLY IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**(Leave to File Granted Jan. 14, 2026)**

## I.    Denver only Pled Negligence.

As correctly stated in Denver's Opposition, a guilty plea does not satisfy the elements of collateral estoppel because there is no final adjudication on the merits under Massachusetts law.  Aetna Cas. & Sur. Co. v. Niziolek, 395 Mass. 737, 747 (1985); Met. Prop. And Cas. Ins. Co. v. Morrison, 460 Mass. 352, 364 (2011).  Markel offers no case law in response to this black letter principle and therefore concedes this point.  Markel's summary judgment motion, limited to the issue of whether a guilty plea triggers the exclusion "as a matter of law," therefore fails.  Doc. No. 158, Order at ¶ 1.

Markel doubles down and argues that Denver's plea colloquy is evidence of not only negligence, but also evidence of recklessness or intoxication based on the wording of G.L. c. 90B, § 8B.  Doc. No. 191, Reply at 4-5.  The statute, to be sure, allows for a conviction based on negligence, or, alternatively, on the heightened culpabilities of recklessness or being under the influence of alcohol or narcotics.  Id. The way the statute is written, however, does not require intoxication or recklessness.  Mere negligence will suffice, and Denver was only charged with (and only admitted to) negligent operation.  Doc. No. 182, SOF at ¶¶ 36-37; see Com. v. Jones, 383 Mass. 387, 389 (1981) (interpreting parallel statute of vehicular homicide, and stating "[a] finding of ordinary negligence suffices to establish a violation of the statute" despite disjunctive and alternative heightened culpabilities).[1]

Markel's pivot is disingenuous and strange because there is no dispute that Denver only pled guilty to negligent operation and never pled guilty to recklessness or operating under the influence. Doc. No. 182, SOF at ¶¶ 36 and 37.  Markel, indeed stipulated to this in its statement of facts and also stipulated that its motion for summary judgment on Exclusion 6 was limited to whether Denver's guilty

---

[1] Markel submits that a finding of more than just mere negligence is necessary for culpability under G.L. c. 90B, § 8B, but offers no authority advancing this point (there is none).  As correctly argued here and in Denver's Opposition, Massachusetts law does not distinguish between criminal and civil negligence.

plea to "boat homicide by <u>negligent operation</u>" triggers the exclusion "as a matter of law." Doc. No. 158, Order at ⌐ 1 (our emphasis).

Even if Markel can change its stipulations at this time, Markel is wrong. "'A plea of 'guilty' is an admission of the material facts alleged in the complaint or indictment, . . . and in so far as it amounts to an admission of facts material in the trial of a civil case in which the person so pleading is a party, it is admissible as evidence against him.'" <u>Niziolek</u>, 395 Mass. at 747 (quoting <u>Morrissey v. Powell</u>, 304 Mass. 268, 269 (1939)). Here, Markel can only use as evidence what Denver admitted in his plea, which was only negligent operation.[2] The argument that Denver admitted to reckless or intoxicated operation has no basis in law or fact, but does shed light on Markel's credibility.[3]

## II. Markel's Summary Judgment Motion is limited to whether the Guilty Plea triggers Exclusion 6 "as a Matter of Law."

After Markel filed its summary judgment motion, this Court allowed Denver's motion to conduct Rule 56(d) discovery (see Doc. Nos. 99-100 and 126), after which Denver sought discovery and depositions from Markel and its claims personnel. Markel moved for a protective order to prevent that (and all other discovery), which prompted unnecessary motion practice and several hearings before the Hon. Magistrate Judge Kelley. See Doc. Nos. 132-34, 137-39, 145-46, 149-50, 153, 156-58. In the wake of this noise, Markel agreed to limit its Motion for Summary Judgment on Exclusion 6 to the narrow issue of whether Denver's guilty plea triggers the exclusion as "a matter of law." Doc. No. 158 at ⌐ 1. The purpose of this limitation was to prevent discovery into Markel's claim files and deposition of Markel's claim personnel to ascertain what Markel learned about the accident contrary to Denver's plea. The other purpose of the stipulation was to narrow the summary judgment motion to prevent

---

[2] The complete transcript of Denver's plea colloquy is set forth in Doc. No. 182-4 (Exhibit R).

[3] Markel's Reply is rife with incredible and false assertions and adjectives, all of which cannot be possibly addressed in this short surreply. Markel's hollow words juxtaposed with the <u>facts</u> of this case speak for themselves.

Denver from engaging the laborious task of putting on evidence that he was not negligent, which would have included, among other things, testimony from the several guests onboard in addition to evidence that Ms. Julce's death was the result of an intervening cause.

Accordingly, Denver properly noted in his Opposition that he need not present evidence necessary to explain or contravene Denver's plea at this time, because Markel agreed to narrow its motion to whether the plea allowed summary judgment on Exclusion 6 "as a matter of law." Doc. No. 179, Opp. at 9-10, n. 7-8.

Markel pivots on reply again and asserts that the only evidence in the record is Denver's plea, and claims that the absence of contrary evidence should support summary judgment in favor of Markel. Doc. No. 191, Reply at 5. This is not a good faith argument because Markel agreed to narrowly focus its summary judgment motion precisely so that Denver need not conduct discovery or present such evidence. As this point contravenes Markel's prior stipulation, it need not be considered.

If the Court is going to permit Markel to advance this reply argument, then the Court should first allow Denver to conduct depositions of Markel's claims personnel that it withheld earlier based on Markel's stipulation. Additionally, the Court should allow Denver to present evidence following that discovery that Denver did not, indeed, engage in a criminal act. Markel cannot be permitted to avoid coverage because it tricked Denver into valuing Markel's stipulation.

### III.    Denver did not Breach the "Warranty of Truthfulness."

Markel argues that Denver breached what it calls the "Warranty of Truthfulness," which is a provision in the Policy entitled "Misrepresentation and Fraud," which states:

> All insurance provided in this policy will be null and void if you, at any time, either intentionally conceal or misrepresent any fact, regardless of materiality, or if you misrepresent or conceal any material fact regardless of intent.[4] No action or inaction by us will be deemed a waiver of this provision.

---

[4] In this clause, *intentionally* modifies both *conceal* or *misrepresent*. As discussed infra Markel's discussion about what "or" means is entirely erroneous. Here, Markel's argument is contravened by Markel's own policy language.

3

Doc. No. 35-1, Policy at 3.

First, nowhere is it alleged in Markel's counterclaim, stated in Markel's statement of facts, or argued in Markel's forty-five [45] pages of briefing that Denver intentionally misrepresented or concealed any fact.  See Doc. No. 14, Counterclaim and Doc. No. 182, SOF.  In any event, insured parties are entitled to have a jury determine whether a representation was made with actual intent to deceive.  Kobico, Inc. v. Pipe, 44 Mass.App.Ct. 103, 108 (1997).  This leaves just the issue of whether Denver unintentionally made a material misrepresentation or omission in his insurance application.

As stated in Denver's Opposition, no such material misrepresentation or omission was made, and there was no breach of what Markel calls the "Warranty of Truthfulness" on reply.[5]

**IV.    Uberrimae Fidei requires the Insured's Reasonable Knowledge of Materiality.**

As correctly stated in Denver's Opposition, an insured only has an obligation to disclose material facts if, "a reasonable person in the assured's position would know that the particular fact is material." Reliance Nat. Ins. Co. (Europe) Ltd. v. Hanover, 222 F.Supp.2d 110, 116-17 (D. Mass. 2002) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 13 (2d Cir. 1986)).  Markel counters that Denver "misstates" this directly quoted law, relying on QBE Seguros v. Morales-Vazquez, 986 F.3d 1, 4-5 (1st Cir. 2021), Catlin at Lloyd's v. San Juan Towing & Marine, 778 F.3d 69, 83 (1st Cir. 2015) and Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 38 (1st Cir. 2006).  Markel claims that this authority supports the proposition that "Controlling First Circuit precedent does **not** require an insurer to prove that the insured reasonably or subjectively knew, or should have known, that a fact was material."  Reply at 22.

Markel is projecting,[6] and is flatly wrong, because these cases not only did not address this issue,

---

[5] This policy provision, indeed, more or less incorporates the doctrine of *uberrimae fidei* and G.L. c. 175, § 186, all of which were already addressed in Denver's Opposition.

[6] Relying on Markel American Ins. Co. v. McRae, 2024 WL 68346 (M.D.N.C. Jan. 5, 2024), Markel argues that Denver's counsel is not making a "principled legal argument" and should be "admonished by this Court."  Reply at 21.  This *ad hominem* attack has no legal merit and is undeserving of the collegial maritime bar.  The McRae case is not on point

but one properly states that the rule of *uberrimae fidei* requires the insured to "'make full disclosure of all material facts of which the insured has, or ought to have, knowledge . . .'" <u>Catlin at Lloyds</u>, 778 F.3d at 82-83 (quoting <u>Grande v. St. Paul Fire & Marine Ins. Co.</u>, 436 F.3d 277, 283 (1st Cir. 2006)).

If we are to live in the world for which Markel advocates, indeed, then all consumers of recreational boat policies should be forced to read the minds of insurance companies and their coverage counsel about what they consider material to insurance risks. That is an impossible ask, especially where, as here, Denver has no insurance expertise and all information about what Markel considers material is kept strictly confidential.

## V.    Markel's Textual Argument Proves Denver is Right.

Again, the best evidence beyond the text itself that Exclusion 6 (on Markel's best day) is ambiguous is Markel's presentation of its textual argument. Markel's multipage and convoluted analysis where it tries to change the meaning of the word "or" coupled with its numbers-added dissection of the exclusion only further proves that Markel is wrong. In English, prepositive modifiers apply to nouns separated by both conjunctions "and" and "or." See, e.g., <u>LePorin v. Preferred Mut. Ins. Co.</u>, 676 F.Supp.3d 60, 65 (D. Mass. 2023) (applying "outboard" to "engines <u>or</u> motors."); see also Add. at 69-70 (further examples); Doc. No. 35-1, Policy at p. 3 (Markel's Fraud and Misrepresentation warranty).

## VI.    Markel provides No Evidence of a "Motor Vehicle Record Violation."

Markel submits that Denver's claim he had no "motor vehicle violation" is "hyper-technical" and improperly based on Massachusetts law (as opposed to federal maritime law),[7] but this is wrong for at least two reasons. First, a "violation" by definition means a violation of some law, which in this case would have to be a Massachusetts traffic law. There are no "motor vehicle violations" that are even

---

(misrepresenting a felony in an insurance application). Markel should focus on the facts of this matter, and not fantastic adjectives and prayers for relief directed to counsel that serve no productive value to the advancement of its case.

[7] Reply at 18-20.

possible under the federal maritime law and Denver was driving his vehicle on land (Newbury Street) at the time of his 2018 MVA.  Second, ambiguities are construed against Markel, and not Denver.  The fact that it is perfectly reasonable for someone like Denver to understand that the 2018 MVA was not a motor vehicle violation (no violation of the law) is fatal to Markel's case regardless of Markel's less than dynamic interpretation.  Markel offers no evidence that the 2018 MVA resulted in any "motor vehicle record violation" and does not even venture to allege what law Denver violated (maritime or otherwise) as a result of the 2018 MVA.

Markel says that Denver, nonetheless, concealed his driving history in breach of *uberrimae fidei*, but this is not actually true.  Denver authorized Markel to pull his driving record whenever it so suited Markel.  See Doc. No. 90-5, Application at p. 2, ⁋ 3 (authorizing Markel to obtain Denver's driving history).  Markel did not do that, of course, because Markel does not consider prior motor vehicle losses/violations when it calculates marine risks.  Even if prior motor vehicle losses mattered, Markel's access to Denver's driving record satisfies Denver's *uberrimae fidei* disclosure obligations.  Cf. Commercial Union Ins. Co. v. Flagship Marine Services, Inc., 982 F.Supp. 310, 313-14 (S.D.N.Y. 1997) (access to insured's survey reports containing undisclosed information satisfies insured's *uberrimae fidei* disclosure obligations).

More to the point, throughout its Reply, Markel conflates its specific application question about whether Denver had any five-year "motor vehicle record violations" with a general inquiry as to all of Denver's prior motor vehicle losses.  No such expansive inquiry was made in Markel's application, and it was reasonable for someone like Denver and Markel's professional insurance agent, Global, to assume that such information was not material.  Markel's internal underwriting guidelines, which do not consider such automobile losses, confirm that such a reasonable assumption is correct.  If Markel wanted to know about all of Denver's past motor vehicle losses, this information could have been

requested in the application.  Doc. No. 182-5, Ex. S, Robertson.

### VII.    Varnell's Conclusions are Contradicted by all the Evidence and all the Cases.

Markel argues that Varnell's conclusory testimony is "uncontradicted," Reply at 25, but this is

not true. Varnell's conclusory declaration is contradicted by (1) all of Markel's underwriting standards

that simply do not take into account automobile losses (2) the testimony of Carroll Robertson, an

experienced insurance professional, who attests that Markel did not consider prior automobile losses

(regardless of cause or culpability) material because they were neither requested in the application nor

made relevant in any of Markel's written underwriting standards or guidelines, and (3) Varnell's

deposition testimony that confirms these points and confirms (a) he never read Denver's driving record

or application before signing his sworn declaration and (b) has no knowledge about the details of

Denver's January 2018 motor vehicle accident.  Doc. No. 182-5, Ex. S.

Further, Markel offers no case law whereby a Court has allowed an insurance company summary

judgment on *uberrimae fidei* based solely on the ex post facto and conclusory declaration of an

underwriter claiming materiality.  As set forth in Denver's Opposition, all of the cases that have

addressed this point hold unequivocally that such conclusory declarations either fail on an evidentiary

basis or are not enough for summary judgment.  Doc. No. 179, Opp. at 23-24 and cited cases.

WHEREFORE, Markel's summary judgment motion should be DENIED.

Respectfully submitted,

Plaintiff, Ryan Denver
By his counsel,

*/s/ Olaf Aprans*
Liam T. O'Connell, Esq., BBO # 694477
Olaf Aprans, Esq., BBO # 670434
FARRELL SMITH O'CONNELL AARSHEIM
APRANS LLP
27 Congress Street, Suite 508
Salem, MA  01970
(978) 744-8918
loconnell@fsofirm.com
oaprans@fsofirm.com

Joel Lewin, Esq. (#298040)
Eric F. Eisenberg, Esq. (#544682)
Hinckley Allen & Snyder
28 State Street
Boston, MA  02109
(617) 345-9000
jlewin@hinckleyallen.com
eeisenberg@hinckleyallen.com

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.2, I served the document herein on all attorneys of record via the ECF/CM system on January 14, 2026.

*/s/ Olaf Aprans*
Olaf Aprans